**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **CHARLES R. GIBSON,** | § | |
| | § | |
| **v.** | § | **NO.  A-05-CA-599 SS** |
| | § | |
| **JO ANNE B. BARNHART,** | § | |
| **COMMISSIONER OF THE SOCIAL** | § | |
| **SECURITY ADMINISTRATION** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE SAM SPARKS
       UNITED STATES DISTRICT JUDGE

Before the Court are: Plaintiff's Memorandum in Opposition to Commissioner's Decision (Clerk's Doc. No. 18);  Defendant's Brief in Support of the Commissioner's Decision (Clerk's Doc. No. 19); Plaintiff's Reply Brief (Clerk's Doc. No. 22); and the Social Security Record filed in this case  (Cited as "Tr.").  The Magistrate Court submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I.  PROCEDURAL HISTORY

Plaintiff Charles Gibson ("Plaintiff") protectively applied for Supplemental Security Income Benefits ("SSI") and Disability Insurance Benefits ("DIB") with a filing date of November 21, 2002, alleging inability to work due to hypertension, heart problems, and a shoulder injury.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 14, 2003.  The ALJ denied Plaintiff benefits in a decision issued August 24, 2004.  Plaintiff appealed this decision to the Appeals Council and submitted additional evidence for review.  The Appeals

Council denied Plaintiff's request for review of the ALJ's decision on May 27, 2005.  On July 29, 2005, Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff disability benefits.

## II.  ISSUES PRESENTED

Plaintiff contends that the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act is not supported by substantial evidence and is not based upon the proper legal standards.  Specifically, Plaintiff raises the following issues: (1) the ALJ failed to properly evaluate the medical and vocational evidence; (2) the ALJ improperly discounted his credibility; and (3) the ALJ failed to make a finding regarding whether or not Plaintiff could maintain employment.

## III.  STATEMENT OF THE CASE

Plaintiff contends that he has been unable to engage in substantial work activity since September 20, 2002, due to hypertension, heart problems, and a right shoulder injury.  Plaintiff was represented at the hearing by an attorney.  A vocational expert testified at the hearing.

### A.    Plaintiff's Testimony

Plaintiff testified that he was born on October 31, 1956.  Tr. 478.  He lives with a woman who works for the state school.  Tr. 501.  As for his educational background, he completed the 11th grade.  *Id.*

Plaintiff worked for the Mahai State School through 1988 as a driver, hauler, and server of food.  Tr. 479-80.  Plaintiff's next job was a construction worker.  Tr. 480.  After that, Plaintiff moved grain out of a silo for two weeks.  Tr. 481.  Plaintiff then worked for a Texaco station where he fixed flats and changed oil.  *Id.*  Plaintiff went from that job back to construction work and then

2

worked half of a year loading trucks with fiber.  Tr. 482.  Plaintiff's next job was for the parks department, where he mowed the grass and picked up trash.  Tr. 483.  After that, Plaintiff did some more construction work and then worked in Wal-Mart's hardware department, where he mixed paints.  *Id.*  Then, Plaintiff worked as a short order cook and later went back to his job at the Mahai State School until December 24, 2002.  Tr. 484-85.  Plaintiff testified he did not work at all in November and quit after the doctor at the school measured his blood pressure at 225 over 150 and told him to go home.  Tr. 498-99.

Plaintiff testified that he cannot work because he has constant chest pain, gets so dizzy he sees spots as a result of his high blood pressure, and gets minor headaches as a result of the Nitroglycerine patch he wears daily.  Tr. 485-87, 509.  Plaintiff claimed that he was taking his medication and his blood pressure was still 187 over 96.[1]  Tr. 487.  He states he has these symptoms all of the time, even when he is sitting watching TV.  Tr. 488-89.  As a result, Plaintiff stated he cannot walk for more than 5 minutes.  Tr. 489.  Plaintiff testified that the medication he is on has only helped marginally by making his chest pain a little less frequent.  Tr. 491-92.  As a result, Plaintiff experiences pain in his chest two to three times a week for five to ten minutes at a time.  Tr. 492.  Plaintiff also has a problem with his right shoulder that he chose not to have operated on because of the risk associated with his bad heart.  Tr. 494-95.  As a result, he cannot reach straight over his head, however, the pain associated with his shoulder only occurs during certain movements.  Tr. 495-96.  Plaintiff stated he did not have trouble carrying his groceries, however, carrying around 8 to 10 pounds with his right shoulder would cause him pain.  Tr. 490, 496.

---

[1]Plaintiff has been on blood pressure medication since 1994.  Tr. 487-88.

As for his daily activities, Plaintiff vacuums, sweeps, cooks twice a week, occasionally does the dishes. Tr. 504-07. Plaintiff testified that although he does not have a working car, he does not have any trouble driving. Tr. 508. As a result of the medications Plaintiff is on, he stated he has to wake up twice a night to urinate, although he testified it does not cause him to urinate frequently during the day. Tr. 513.

**B.     Vocational Expert's Testimony**

The V.E. testified that Plaintiff's past relevant work as a construction worker was heavy and semiskilled. Tr. 515. Plaintiff's work as a truck driver was rated medium and his work as a counter attendant in the cafeteria is rated light and semiskilled. *Id.* Plaintiff's job as a material handler is considered heavy and semiskilled, as is his job as a tire repairer. *Id.* Plaintiff's work as a service station attendant is considered medium and semiskilled. *Id.* Working as a groundskeeper is considered medium and semiskilled, while the jobs at Wal-Mart and as a short order cook were light and unskilled.[2] Tr. 516.

The ALJ posed a hypothetical question to the V.E., which asked the V.E. to consider a hypothetical individual who was the same age, and had the same education and work background who could lift 20 pounds occasionally and 10 pounds frequently and could sit, stand, or walk for 6 hours a workday. Tr. 517. The ALJ stated the person could perform a full range of light work, except that the person could only do occasional overhead work with his dominant arm. *Id.* The V.E. stated that such a person could perform Plaintiff's past relevant work as a sales attendant at Wal-Mart and as a counter attendant at the school. Tr. 517-18.

---

[2]Plaintiff's job as a short order cook was part-time. Tr. 516-17.

The ALJ then asked the V.E. if a person with the above-mentioned restrictions as well as the additional restrictions that he had to have the ability to lie down during the day when he wished, could not stand or walk enough to perform light work, and could only walk a total of two hours during the work day for 5 minute intervals, could perform competitive work.  Tr. 518.  The V.E. stated that such a person could not.  Tr. 519.

**B.    Medical Records**

The following is a summary of Plaintiff's medical records relevant to the issues presented in the instant case.  The relevant time period is September 20, 2002, the alleged onset of Plaintiff's disability, through the date of the ALJ's decision, August 24, 2004.  Plaintiff must demonstrate that he was under a disability on or before August 24, 2004, in order to receive benefits.  *See Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990) ("Claimants bear the burden of establishing a disabling condition before the expiration of their insured status").

In October of 2001, Plaintiff was given cardiac clearance for surgery on his shoulder.[3]  Tr. 167.  Plaintiff underwent a stress test in May of 2002 and was again cleared for shoulder surgery.  Tr. 171, 175  Plaintiff's surgery was scheduled for July of 2002 but canceled because of an illness in the family.  Tr. 177.  Plaintiff was referred to Dr. Sy, a cardiologist, by Dr. Shefa, his treating physician, for an evaluation on September 20, 2002.  Tr. 157.  Dr. Sy noted that Plaintiff refused surgery because of possible complications with his heart.  Tr. 158.  Dr. Sy recorded that Plaintiff had a history of coronary heart disease, but had only had to take two nitroglycerine pills since March and had been working at Wal-Mart lifting 40 to 50 pounds without any unusual shortness of breath or

---

[3]His shoulder was injured in an automobile accident in 1995.  Tr. 364.

5

chest pains.[4]  *Id.*  Dr. Sy determined Plaintiff had coronary artery disease, high blood pressure, and

high cholesterol.  Tr. 158.  Dr. Shefa, at the VA hospital, noted on November 14, 2002, that Plaintiff

decided not to have surgery on his shoulder because of the cardiac risk and was being treated for

depression with medication.  Tr. 153.  Dr. Parks examined an x-ray of Plaintiff's chest on November

15, 2002, and determined that, other than a little buildup in his aorta, the chest exam did not reveal

any problems.  Tr. 130.

On November 19, 2002, Plaintiff visited the Parkview Medical Clinic, where a nurse noted

his blood pressure ranged from 225 over 100 to 174 over 100, however, his blood pressure was 180

over 90 that day.  Tr. 124.  In December, it was noted his blood pressure had improved and was

measured as 164 over 100.  Tr. 127.

On December 13, 2002, Plaintiff went to the emergency room, complaining of more severe

chest pain than normal, and it was noted that although he reported having an angioplasty, it was

doubted since his last catherterization showed no evidence of obstructive coronary disease.  Tr. 139-

41, 276.  An x-ray on December 13th showed his heart size was within normal limits and the only

minor abnormality was a little spine degeneration.  Tr. 369.  Dr. Harris examined Plaintiff's EKG

---

[4]Dr. Sy noted that Plaintiff had had three angioplasties in the past.  Tr. 157.  Apparently, these angioplasties were self-reported because Dr. Falcone, who examined Plaintiff earlier in 2002, also noted that Plaintiff reported he had had three angioplasties, however, he stated he could not "find any objective evidence of any underlying obstructive coronary artery disease."  Tr. 229.  Dr. Falcone went on to state, "I am very suspicious that he ever had any angioplasty to his vessels and certainly he does not have any evidence of irregularity whatsoever."  *Id.*  Additionally, the medical records from Scott & White Hospital in 1998 when Plaintiff reported having any angioplasty show that he had a catheterization and angiogram, both of which are diagnostic, and those tests showed his arteries were normal.  Tr. 219.

and found he had an abnormal EKG and found a slight change from the EKG he had in August of 2002.[5]  Tr. 420.

On January 9, 2003, Dr. Spoor assessed the case and determined Plaintiff did not have any severe impairments, and noted that there was no evidence of any cardiac problem other than Plaintiff's complaints to doctors, so his alleged limitations were not supported by the medical record. Tr. 117.  Since it had been noted that Plaintiff's chest pain might be related to stomach problems, Plaintiff's upper gastrointestinal tract was examined, however, nothing unusual was found.  Tr. 368. Dr. Shefa noted on April 4, 2003, that Plaintiff's chest pain was probably not associated with his heart and that Plaintiff was not taking his medication for depression.  Tr. 265.  Dr. Shefa went on to say, "there is no medical evidence that would make [Plaintiff] unemployable."  *Id.*  On July 9, 2003, Dr. Shefa noted that Plaintiff was reconsidering the shoulder surgery because of increased pain and because the angiogram came back normal.  Tr. 425.  Dr. Hyman, at the orthopedic clinic, noted that Plaintiff had a normal cardiac stress test, angiogram, and that Plaintiff was only reporting occasional episodes of chest pain.  Tr. 426.  Dr. Hyman also looked at the EKG which showed a mild problem with Plaintiff's left ventricle and mild to moderate regurgitation.  *Id.*

Plaintiff was seen by an orthopedic surgeon associated with the VA on July 31, 2003, who determined Plaintiff had full strength, with some degree of limitation and some tenderness, however, he had an otherwise fully intact rotator cuff.  Tr. 253.  A staff radiologist at the VA examined x-rays of Plaintiff's shoulder and found it to be normal.  Tr. 366.  On November 17, 2003, Plaintiff went to the VA complaining about his blood pressure and chest pain and to request another steroid

---

[5]Dr. Falcone, who performed a catheterization and angiogram on Plaintiff in 2002, felt that the changes in Plaintiff's EKGs stemmed from his high blood pressure, not cardiac disease.  Tr. 234.

injection in his right shoulder, which had given him temporary relief.   Tr. 245.   At the visit, Plaintiff's blood pressure was 150 over 74 and he stated his shoulder pain was 10 of 10 with or without medication.   Tr. 247.

## IV.  FINDINGS OF ADMINISTRATIVE LAW JUDGE

After review of the medical evidence, consideration of Plaintiff's testimony, the vocational expert's testimony as well as consideration of Plaintiff's alleged disabling impairments, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.  Tr. 12. The ALJ found that Plaintiff had severe impairments of cardiac ischemia, hypertension, and a torn rotator cuff, but that such impairments did not meet the Listing of Impairments.  Tr. 15.

The ALJ found Plaintiff's depression was not severe because it was only mentioned twice in the record where Plaintiff reported being depressed for two weeks in response to routine screenings and because it was never mentioned in any of his visits to the ER.[6]  Tr. 14.  The ALJ found that Plaintiff was not fully credible when it came to his medical history because, although Plaintiff reported occasional chest pain since the alleged onset of disability, there was no objective medical evidence showing that he had myocardial infarctions or coronary artery disease since September 20, 2002.[7]  Tr. 15.  The ALJ felt Plaintiff was exaggerating the severity of his heart problems because he testified that he could not have surgery on his shoulder, when the medical records show he was given medical clearance for the surgery in 2001 and 2002.  Tr. 16.  Although

_____

[6]Although Plaintiff was prescribed medication for his self-reported depression, he chose to discontinue its use.  When a person chooses not to follow the treatment regimen prescribed by a doctor for a problem, that person will not be considered disabled in relation to that problem.  20 C.F.R. § 404.1530, *Johnson v. Sullivan*, 894 F.2d 683, 685 N. 4 (5th Cir. 1990).

[7]The ALJ noted that despite Plaintiff's reported angioplasties, there is no credible medical evidence to support Plaintiff's claim.  Tr. 15.

Plaintiff testified that lifting 8 to 10 pounds with his right arm and shoulder would cause pain, the ALJ noted that no treating physician ever imposed such a restriction.  *Id.*  The ALJ found that Plaintiff's unusual sleeping habits and low level of activity were self-imposed, not dictated by his medical conditions.  *Id.*  After reviewing all of the testing performed on Plaintiff's shoulder, the ALJ found that although his impairment does cause some pain with certain movements, none of the medical opinions in the record state that Plaintiff has any permanent limitations for lifting, carrying, walking, or standing.  *Id.*

The ALJ determined Plaintiff had a residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, could sit and stand for 6 hours in an 8 hour workday, and was limited to occasionally reaching with his right arm.  Tr.17.  The ALJ noted the V.E. found Plaintiff could return to his past relevant work as a sales attendant or fast food worker, both of which are considered light and unskilled.[8]  *Id.*  The ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act at any time through the date of his decision.  Tr. 18.

## V.  STANDARD OF REVIEW

In Social Security disability appeals, the limited role of the reviewing court is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standard.  *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a

---

[8]The V.E. testified that Plaintiff could perform his past relevant work as counter attendant, which is considered light and semiskilled and offered no opinion on Plaintiff's ability to perform his past job as a fast food worker, which is light and unskilled.  Tr. 515-18.

conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  Courts weigh four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) her age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). However, the  reviewing court cannot re-weigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Martinez*, 64 F.3d at 174.  If supported by substantial evidence, the Commissioner's findings are conclusive and are to be affirmed. *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

## VI.  ANALYSIS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520 (1999).  First, the claimant must not be presently working at any substantial gainful activity.[9]  Second, the claimant  must have an impairment or combination of impairments that is severe.  An impairment or combination of impairments is "severe" if it "significantly limits [a

---

[9] Substantial gainful activity is work activity that is both substantial and gainful.  Substantial work activity is work activity that involves doing significant physical or mental activities.  Gainful work activity is work activity that an individual performs for pay or profit. 20 C.F.R. 416.972.

claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations.  Fourth, the impairment must prevent the claimant from returning to her past relevant work.  Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education, and past work experience.  20 C.F.R. § 404.1520.

At steps one through four, the burden of proof rests upon the claimant to show she is disabled.  *Crowley*, 197 F.3d at 198.  If the claimant acquits his responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment that claimant is capable of performing in spite of his existing impairments. *Id.*  If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work. *Id.*

**A.      Did the ALJ Properly Assess the Medical and Vocational Evidence?**

Plaintiff argues that the ALJ did not give proper weight to the opinions of his treating physicians or the state agency doctors and that the medical evidence shows that Plaintiff could not perform any of his past relevant jobs nor could he work in any competitive environment.  Defendant responds that the ALJ's findings were supported by the evidence in the record.

The Social Security Regulations provide that all medical opinions are to be considered in determining the disability status of a benefits claimant. 20 C.F.R. §§ 404.1527(b), 416.927(b).  Nonetheless, opinions on ultimate issues, such as disability status under the regulations, are reserved exclusively to the ALJ. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).  Statements by medical sources to the effect that a claimant is "disabled" are not dispositive, but an ALJ must consider all medical findings and evidence that support such statements. *Id.*  Additionally, the Commissioner "will not

11

give any special significance to the source of an opinion on issues reserved to the Commissioner" including a claimant's residual functional capacity, which is a finding expressly reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e)(2) and (3).

The regulations break medical source opinions down into three general categories: non-examining, non-treating, and treating.  20 C.F.R. §§ 404.1502, 416.902.  Non-examining sources are those whose assessments are premised solely on a review of medical records.  *Id.*  State agency physicians consulted by the ALJ fall into this category.  *Id.*  Non-treating sources are those who have examined the claimant, but who do not have "an ongoing treatment relationship" with same.  *Id.* This "term includes an acceptable medical source who is a consultative examiner . . . when the consultative examiner is not [a claimant's] treating source."  *Id.*  Finally, medical sources who have had an "ongoing treatment relationship" with the claimant are regarded as treating sources.  *Id.*

The Social Security Regulations provide guidelines for the consideration of expert medical opinions of a claimant's treating physician.  Under 20 C.F.R. § 404.1527(d)(2), consideration of a treating physician's opinion must be based on:

> (1) the physician's length of treatment of the claimant,
> (2) the physician's frequency of examination,
> (3) the nature and extent of the treatment relationship,
> (4) the support of the physician's opinion afforded by the medical evidence of record,
> (5) the consistency of the opinion with the record as a whole, and
> (6) the specialization of the treating physician.

*Newton v. Apfel,* 209 F.3d 448, 456 (5th Cir. 2000) (citing 20 C.F.R. § 404.1527(d)(2)); *accord Myers v. Apfel,* 238 F.3d 617, 621 (5th Cir. 2001); *see also* 20 C.F.R. 416.927(d)(2).

In this case, the ALJ reviewed the medical record and specifically noted why he did not find that Plaintiff's impairments met the Listings.  In regards to Plaintiff's injury to his rotator cuff, the ALJ noted that although the medical record revealed that Plaintiff's shoulder impairment resulted

in pain in some movements, there was no medical opinion stating that Plaintiff's shoulder injury caused permanent limitations in his lifting, carrying, walking, or standing. Tr. 16. The orthopedist that Plaintiff was referred to by his treating physician found that although Plaintiff had some degree of limitation in the movement of his shoulder and some tenderness upon palpatation, his rotator cuff was otherwise fully intact and Plaintiff had full strength in his shoulder. Tr. 253. Additionally, the radiologist found the x-ray of his shoulder showed no abnormalities. Tr. 366. Thus, the ALJ's finding regarding the limitations associated with his shoulder impairment was consistent with the examining physicians.[10]

As for Plaintiff's chest pain, the cardiologist to whom Plaintiff was referred by his treating physician, noted in September of 2002 that Plaintiff had only taken two nitroglycerine pills in 7 months and had been continuing to work at Wal-Mart lifting 40 to 50 pounds without any unusual shortness of breath or chest pain. Tr. 157. An x-ray of Plaintiff's heart in November of 2002, revealed no problems other than some buildup in his aorta. Tr. 130. Although Plaintiff told doctors in the emergency room in December of 2002 that he had had angioplasties in the past, the doctors specifically noted that that did not make sense since his catheterizations showed no evidence of obstructive coronary disease or evidence of an angioplasty. Tr. 139-41, 276. Although Plaintiff's EKGs were abnormal and changed during the time of alleged disability, Dr. Falcone, who examined Plaintiff in 2002, concluded that the abnormality and changes shown in his EKGs stemmed from his high blood pressure, not cardiac disease. Tr. 234. Most telling is the fact that Plaintiff's treating physician determined that Plaintiff's chest pain was probably not associated with his heart and stated

---

[10]Even Plaintiff's testimony supported the ALJ's finding, as Plaintiff showed that he had a slight limitation in reaching, but stated that he only experiences shoulder pain when he makes certain uses of it and he did not act as if it was a major concern. Tr. 495-96.

that, "there is no medical evidence that would make [Plaintiff] unemployable." Thus, despite the

reported shoulder pain, chest pain, and high blood pressure, his treating physician felt he could work.

As for the state agency doctor that evaluated the medical record, Dr. Spoor found that

Plaintiff did not have any severe impairments and found no evidence of a cardiac problem, even

though he noted Plaintiff complained of it frequently, and decided his limitations were not supported

by the record. Tr. 117. Thus, it is clear that the ALJ considered and followed the opinions of the

doctors included in the medical record, so it is unclear how Plaintiff can argue that the ALJ did not

give proper weight to the opinions of these doctors.

Plaintiff asserts that the ALJ should have recontacted the treating physicians regarding his

impairments. However, the ALJ is only supposed to recontact a physician if he does not have

sufficient evidence in the medical record to determine whether or not the person is disabled. 20

C.F.R. § 404.1512(e); *Newton v. Apfel*, 209 F.3d 448, 457 (5th Cir. 2000). Since the medical record

was consistent and clearly supports the ALJ's determination that Plaintiff was not disabled, the ALJ

had no need to recontact any of the doctors.

As for the ALJ's determination regarding Plaintiff's residual functional capacity, Plaintiff's

treating physician found that none of Plaintiff's physical impairments would make him unable to be

employed and the examining doctors found that Plaintiff's shoulder injury left him with full strength

and only some degree of limitation in movement and tenderness. Tr. 265, 253. The ALJ included

the effect of Plaintiff's shoulder injury on his ability to use his right arm. Thus, the ALJ's

determination is supported by the treating and examining doctors.

Regarding the ALJ's determination that Plaintiff could return to his past relevant work as a

sales attendant, an ALJ may rely upon the V.E.'s testimony to determine what jobs the Plaintiff can

14

perform as long as the record supports the V.E.'s conclusion.  *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000).  Jobs as sales attendants are considered light and unskilled.  Tr. 516.  Since the medical record supports the ALJ's conclusion that Plaintiff could perform light work, limited by the fact that he should only have to occasionally do overhead work with his right arm, the V.E.'s conclusion is supported by the record..[11]

**B.     Did the ALJ Improperly Discount Plaintiff's Credibility?**

Plaintiff alleges the ALJ did not provide specific reasons for discounting Plaintiff's credibility, so the case should be remanded.  Defendant asserts that the ALJ did properly consider Plaintiff's credibility given the factors in the regulations.

Although pain in and of itself can be a disabling condition, it must be "constant, unremitting, and wholly unresponsive to therapeutic treatment."  *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988).  In order to prove a disability resulting from pain, an individual must establish a medically determinable impairment that is capable of producing disabling pain. *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995); 20 C.F.R. § 404.1529 (1997).  Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity.  *Ripley*, 67 F.3d at 556; 20 C.F.R. § 404.1529.  Although the ALJ must consider subjective evidence of pain, it is within his discretion to determine its debilitating nature, and such determinations are entitled to considerable deference.  *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987).  The ALJ's "determination or decision [regarding credibility] must contain

---

[11]As noted *supra*, the ALJ only asked the V.E. if Plaintiff could perform his past relevant work as a sales attendant and counter attendant.  Whether Plaintiff could perform his job as a fast food worker, which is light and unskilled, was not discussed.  However, since the ALJ also found that Plaintiff could work as a sales attendant based on the V.E.'s testimony, the discrepancy does not necessitate remand.

specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Policy Interpretation Ruling Titles II and XVI, SSR 96-7p, 1996 WL 374186, at *2.

When assessing the credibility of an individual's statements, the ALJ is required to consider: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(3)(i)-(vii).

In accordance with the requirements of the above Social Security rulings and regulations, in determining the credibility of Plaintiff's subjective complaints of pain, the ALJ considered the entire case record, including the objective medical evidence, the individual's own statements about his symptoms, the factors listed in 20 C.F.R. § 404.1529, statements and other information by treating physicians, and statements and opinions provided by the vocational expert.  Although the ALJ noted that Plaintiff complained of chest pain, the ALJ found it to be not fully credible because there was no objective evidence in the record of any myocardial infarction or coronary artery disease.  Tr. 15. The Fifth Circuit has "recognized that an absence of objective factors indicating the existence of severe pain – such as limitations in the range of motion, muscular atrophy, weight loss, or

impairment of general nutrition – can itself justify the ALJ's conclusion." *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988). "It must be remembered that '[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled.'" *Harrell*, 862 F.2d at 480 (quoting *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983)).

Additionally, the ALJ noted that although Plaintiff repeatedly told doctors that he had had three angioplasties, there was nothing in the medical record to support that and doctors in the emergency room and examining doctors noted that it did not make sense that Plaintiff had had an angioplasty because his catheterizations and angiograms came back normal and because there was no sign of a stent from an angioplasty.  Tr. 15.  Additionally, the medical record from 1998, when Plaintiff claims he had one of the angioplasties, shows he had an angiogram that revealed no problem with his arteries.  Tr. 219.  As for his shoulder, Plaintiff testified that he did not have surgery on it because of the associated risk from his heart problems, however, the record reveals that he was cleared for surgery in 2001 and 2002 after cardiac testing.   The fact that Plaintiff decided to forgo prescribed medical treatment reflects upon Plaintiff's credibility with regard to the seriousness of his impairments.  *See Johnson v. Sullivan*, 894 F.2d 683, 685 N. 4 (5th Cir. 1990) (plaintiff would not be found disabled where he failed to follow the treatment regimen prescribed by his physicians). Additionally, although Plaintiff testified that he had unusual sleeping habits and did not do much during the day, he stated that he continued working even after he applied for disability and stated that he had no troubles vacuuming or carrying the groceries.  Tr. 485, 490, 504.

The Court finds that the ALJ's evaluation of the Plaintiff's subjective complaints was based on the proper legal standards.  In addition, the Court finds that the ALJ's determination that Plaintiff's pain and impairments were not disabling is supported by substantial evidence.

**C.    Did the ALJ err in not making a specific finding that Plaintiff could maintain employment?**

Plaintiff argues that the treating physicians' opinions show that his conditions waxed and waned, so a finding should have been made as to his ability to maintain employment.[12]  Defendant responds that Plaintiff's condition is not one that has been shown to wax and wane, so the ALJ was not required to make a specific finding regarding Plaintiff's ability to maintain employment.

The Fifth Circuit considered this issue in *Watson v. Barnhart*, where the ALJ found that the claimant had a severe degenerative disc disease, but was not disabled and had an exertional capacity for medium work.  288 F.3d 212, 215 (5th Cir. 2002).  The claimant argued that the ALJ erred in failing to make a determination that he could maintain employment. *Id.* at 217.  The Fifth Circuit agreed. *Id.* at 218.  This issue, however, was revisited by the Fifth Circuit in *Frank v. Barnhart*, 326 F.3d 618, 619-20 (5th Cir.2003).  In *Frank*, the Fifth Circuit clarified that "nothing in *Watson* suggests that the ALJ must make a specific finding regarding the claimant's ability to maintain employment in every case." *Id.* at 619.  The Fifth Circuit further explained:

> *Watson* required the ALJ to make a finding as to the claimant's ability to maintain a job for a significant period of time, notwithstanding the exertional, as opposed to non-exertional (e.g., mental illness) nature of the claimant's alleged disability.

---

[12]In his reply, Plaintiff states that he is not arguing that the ALJ should have made a specific finding that he could maintain employment.  Instead, he asserts his argument is that the ALJ should have considered all of the evidence in determining whether or not Plaintiff could sustain substantial gainful employment.  Since that was addressed above, the Court will not readdress it.  For the sake of completeness, the Court will address the argument Plaintiff originally raised that his impairment waxed and waned.

Watson requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms.  For example, if Frank had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination.  At bottom, *Watson* holds that in order to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time.  An ALJ may explore this factual predicate in connection with the claimant's physical diagnosis as well as in the ability-to-work determination.  Usually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment.  Nevertheless, an occasion may arise, as in *Watson*, where the medical impairment, and the symptoms thereof, is of such a nature that separate consideration of whether the claimant is capable of maintaining employment is required. Frank did not establish the factual predicate required by *Watson* to necessitate a separate finding in this regard.

*Id.* at 619-20.

While it is true that in general, determining a claimant's residual functional capacity requires consideration of whether a claimant is able to perform work duties on a continuous basis, there is no requirement that an ALJ make an explicit "regular and continuing basis" finding absent evidence of a waxing and waning nature of the claimant's symptoms, such that the impairment interferes with the claimant's ability to maintain employment on a continuing basis.  *Campbell v. Barnhart*, 374 F.Supp.2d 498, 502-03 (E.D. Tex. 2005).

In this case, there is no medical evidence that Plaintiff's impairment waxed and waned in a way that needed to be specifically addressed by the ALJ, and Plaintiff does not cite to any such evidence.  Although Plaintiff testified that his shoulder only hurt when he used it in certain ways, this was addressed in the hypothetical posed to by the ALJ, by stating that the hypothetical individual could only occasionally do overhead work with his right arm and the jobs the V.E. testified Plaintiff could do, accommodated that limitation.  Thus, Plaintiff's intermittent shoulder pain would not rise to the level needed to be addressed by a specific finding regarding his ability to maintain

employment.  As for his chest pain, he testified that he used nitroglycerine patches which helped

with the chest pain, so his pain, unlike periodic loss of movement in one's legs, also did not need

to be addressed by a finding regarding maintaining employment.

## VII.  RECOMMENDATION

The Magistrate Court **RECOMMEND**S that the District Court **AFFIRM** the final decision

of the Commissioner and **ENTER JUDGMENT** in favor of the Defendant.

## VIII.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing

objections must specifically identify those findings or recommendations to which objections are

being made.  The District Court need not consider frivolous, conclusive, or general objections.

*Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations

contained in this Report within ten (10) days after the party is served with a copy of the Report shall

bar that party from de novo review by the district court of the proposed findings and

recommendations in the Report and, except upon grounds of plain error, shall bar the party from

appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the

district court.  *See* 28 U.S.C. § 636(b)(1)(C);  *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S. Ct. 466,

472-74 (1985);  *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir.

1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report &

Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is

directed to mail such party a copy of this Report and Recommendation to the parties by certified mail, return receipt requested.

SIGNED this 15th day of August, 2006.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

21